UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GEORGE A. WINCH, JR., M.D., an individual, and GEORGE A. WINCH, JR., M.D., A PROFESSIONAL CORPORATION, a Nevada Professional Corporation, dba ELKO WOMEN'S HEALTH CENTER,<br><br>Plaintiffs,<br><br>v.<br><br>LIFEPOINT RC, INC., a Delaware Corporation doing business in Nevada,<br><br>Defendant. | 3:10-CV-00061-LRH-RAM<br><br>ORDER |

Before the court is Plaintiffs George A. Winch, Jr., M.D., and George A. Winch, Jr., M.D., A Professional Corporation's[1] Motion for Temporary Restraining Order (#2[2]).

**I.      Facts and Procedural History**

This is an antitrust dispute arising out of Plaintiff George A Winch, Jr.'s medical practice in Elko, Nevada. Dr. Winch is a physician who has practiced obstetrics and gynecology in Elko since 1989. In 1994, Dr. Winch opened the Elko Women's Health Center, where he continues to

---

[1] George A Winch, Jr., M.D., A Professional Corporation is doing business as Elko Women's Health Center.

[2] Refers to the court's docket entry number.

practice. Defendant Lifepoint RC., Inc., owns Northeastern Nevada Regional Hospital ("NNRH" or "the hospital"), also in Elko. NNRH is the only hospital providing inpatient obstetrical and gynecological surgical facilities within a 100 mile radius of Elko.

For reasons that are not currently clear to the court, from May 14, 2009, to December 15, 2009, the hospital suspended Dr. Winch's practicing privileges at the hospital. It appears that since December 15, 2009, the hospital has allowed Dr. Winch to use its facilities. However, on January 22, 2010, the hospital received a complaint from a patient about Dr. Winch.[3] On January 27, 2010, the hospital sent Dr. Winch a letter notifying him of the complaint. The letter states, "It was the agreement of the Medical Examination Committee that you have violated your signed monitoring agreement from December 2009."[4] (Pls.'Mot. TRO (#2), Winch Aff., ¶ 21.) The letter asks Dr. Winch to attend a meeting of the Medical Executive Committee on February 2, 2010, at 7:00 a.m. to discuss the patient's complaint.

As a result of this conduct, in the motion for a temporary restraining order, Plaintiffs allege,

> Lifepoint threatens to substantially limit the choice of Obstetrical and Gynecological physicians available to pregnant women and their families . . . by suspending, revoking, or otherwise limiting the medical and surgical privileges of Winch at NNRH for reasons unrelated to quality of care issues, and which are designed to further consolidate Lifepoint's monopoly power in the marketplace.

(Pls.' Mot. TRO (#2) at 3.)

## II.     Legal Standard

The same legal standard applies to temporary restraining orders and preliminary injunctions sought pursuant to Federal Rule of Civil Procedure 65. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that the analysis applied to temporary

---

[3] Plaintiffs note that the patient was on "Patient-Controlled Analgesia" when she made the complaint. Plaintiffs further note that patients on "PCA" are not legally capable of providing consent or other testimony.

[4] As a result of the dispute leading to Dr. Winch's suspension, Dr. Winch and the hospital entered into a Monitoring Agreement. Plaintiffs have not provided the agreement to court. However, Plaintiffs allege that under the agreement, the hospital was required to address any complaints against Dr. Winch informally before resorting to formal procedures.

2

restraining orders and preliminary injunctions is "substantially identical").  The court may enjoin or restrain a defendant from acting where the plaintiff demonstrates the following: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest.  *See Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 376 (2008) (citations omitted).

### III.  Discussion

As a preliminary matter, the court notes that Plaintiffs seek a temporary restraining order without notice to Defendant.  Pursuant to Federal Rule of Civil Procedure 65(b)(1), the court may issue a temporary restraining order without notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

Plaintiffs' attorney has provided a signed statement indicating that the hospital has no known local counsel, and the "imminent suspension of Dr. Winch's privileges rendered communication with the Hospital over the weekend impossible."  (Pls.' Mot. TRO (#2) at 7.)  The statement urges the court to grant the motion ex parte because "a day in suspension will cause cataclysmic and irreparable harm both to the practice of Dr. Winch and to the marketplace in which Dr. Winch delivers Obstetrical and Gynecological services." (*Id.*)

The court will deny Plaintiffs' request for a temporary restraining order for several reasons.  First, in his signed statement, Plaintiffs' counsel fails to state whether he attempted to notify Defendant of the requested temporary restraining order and, if so, what those attempts were.  For example, although counsel's statement indicates that Defendant does not have "known local counsel," the statement does not indicate that Plaintiffs' counsel made any effort to determine who

3

represents Defendant and, if efforts were made, what those efforts consisted of.  Second, Dr. Winch received notice of the February 2, 2010, meeting on January 29, 2010, and it appears that Dr. Winch is in regular contact with management-level staff at the hospital.  Thus, Dr. Winch had several days to contact the hospital and inform them of the pending motion.  Neither Dr. Winch's affidavit nor his attorney's statement indicates (1) that attempts were made to contact the hospital and notify them of the requested restraining order and (2) if attempts were made, what those attempts were.

      Moreover, nothing in Dr. Winch's affidavit or the letter from the hospital notifying him of the February 2 meeting suggests that the hospital intends to revoke Dr. Winch's hospital privileges at the meeting.  The letter merely indicates that, at the meeting, the Medical Executive Committee intends to discuss the patient complaint with Dr. Winch.  Plaintiffs have not provided any evidence indicating that it is the practice of the hospital to revoke practicing privileges at such meetings or otherwise suggesting that Dr. Winch's practicing privileges will be immediately revoked.  Likewise, based on the evidence before the court, the possibility that Dr. Winch will be forced to close his practice as a result of any action taken during the meeting is no more than speculation.  Accordingly, the court finds that Plaintiffs have failed to show a likelihood of irreparable harm in the absence of preliminary relief, and the court will deny the motion for a temporary restraining order.

      IT IS THEREFORE ORDERED that Plaintiffs' Motion for Temporary Restraining Order (#2) is hereby DENIED.

      IT IS SO ORDERED.

      DATED this 1st day of February, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

4